## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  2:06 CR 118 |
| | ) | |
| JEWELL G. HARRIS, SR. | ) | |

### OPINION and ORDER

## I. INTRODUCTION

Because portions of this case file are under seal, the court articulates its reasoning while taking care to keep from exposing matters that are under seal. Defendant is charged with mail fraud, wire fraud, and aiding and abetting an engagement in monetary transactions in criminally derived property. Before the court is defendant's motion to quash the search warrants and suppress the evidence seized in searches of his businesses (docket # 15). For the reasons set forth below, the motion is DENIED.

## II. DISCUSSION

Defendant challenges three search warrants in his motion. Magistrate Judge Rodovich signed two of these warrants on December 5, 2003, authorizing the search of 15 West 6th Avenue (hereinafter "6th Avenue") and 4710 Industrial Highway (hereinafter "Industrial Highway"). The 6th Avenue and Industrial Highway locations are home to defendant's businesses, Enterprise Trucking and Waste Hauling (hereinafter "Enterprise Trucking") and Enterprise Properties, respectively. On December 8, 2003, Magistrate Judge Rodovich signed a warrant authorizing the search

of another business property belonging to Enterprise Trucking, located at 2573 East 15th Avenue (hereinafter "15th Avenue"). Defendant argues that the warrants were based on improperly incorporated documents, lacked probable cause, and violated his First Amendment rights. Each argument is addressed in turn below.

### A. Incorporation

The precise scope of defendant's "incorporation" argument is difficult to glean, but, generally, it seems that defendant argues that supporting affidavits and/or attachments were improperly incorporated into the warrants and/or warrant applications in this case. The court addresses below a number of possible permutations in order to afford defendant's argument the benefit of the doubt.

To the extent that defendant argues that the warrant applications did not properly incorporate their accompanying affidavits, and that without the affidavits no probable cause can be found to justify the searches, the argument is rejected. The 6th Avenue and Industrial Highway warrant applications each incorporate identical affidavits authored by Special Agent Graessle (hereinafter collectively "December 5th affidavits") by use of the phrase "See attached affidavit." The 15th Avenue warrant similarly incorporates an affidavit authored by Special Agent Tony Reidlinger (hereinafter "December 8th affidavit") by use of the same phrase. Courts have repeatedly held that this terminology is a proper means of incorporation. *Rivera Rodriguez v. Beninato*, 469 F.3d 1, 5 (1st Cir. 2006) ("Here, the warrant stated, 'See attached affidavit,' language which suffices to incorporate the affidavit."); *Baranski v.*

2

*Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms,* 452 F.3d 433, 449 (6th

Cir. 2006); *United States v. Beaumont,* 972 F.2d 553, 562 (5th Cir. 1992); *see also*

*Massachusetts v. Sheppard,* 468 U.S. 981, 990 n.7 (1984) ("This is not an instance in which

it is plainly evident that a magistrate or judge had no business issuing a warrant. ...

Indeed, Sheppard admits that if the judge had crossed out the reference to controlled

substances, written 'see attached affidavit' on the form, and attached the affidavit to the

warrant, the warrant would have been valid.") (citations omitted). Accordingly, the

court rejects the argument that the December 5th and 8th affidavits were improperly

incorporated by reference into the warrant applications.

To the extent that defendant challenges the fact that the December 5th and 8th

affidavits themselves incorporated additional affidavits previously used for

applications for Title III intercepts (or "wire taps"), the argument is also rejected.

Defendant has cited and the court can locate no authority holding that this daisy-chain

method of incorporation is impermissible; instead, there are numerous decisions to the

contrary. *E.g., United States v. Brown,* 832 F.2d 991, 996 (7th Cir. 1987) (second search

warrant affidavit "incorporated all of the relevant information contained in the first

search warrant affidavit, a practice we have previously deemed proper"); *United States*

*v. Sitton,* 968 F.2d 947, 956 (9th Cir. 1992) (proper for main affidavit to incorporate by

reference another affidavit that supported an earlier eavesdropping warrant), *abrogated*

*in part on unrelated sentencing issue, Koon v. United States,* 518 U.S. 81 (1996); *United States*

*v. Blakeney,* 942 F.2d 1001, 1024 (6th Cir. 1991) (where magistrate explicitly incorporated

first affidavit, which in turn incorporated second affidavit, both affidavits were properly incorporated for purposes of probable cause determination). Accordingly, the court finds that it was permissible for the search warrant affidavits to incorporate the Title III intercept affidavits by reference.[1]

To the extent that defendant argues that the warrants (as opposed to the applications) did not properly incorporate materials needed to satisfy the Fourth Amendment's particularity requirement as to the items to be seized, the argument is rejected. Each warrant in this case includes a space for the description of the "certain person or property" to be seized. In that space on each warrant, the phrase "See attachment" appears. A document entitled "Attachment to search warrant" is attached to each warrant and describes the items to be seized. Whether these descriptions are sufficiently particularized to meet the demands of the Fourth Amendment is another question (and in fact the court answers that question in the affirmative later in this

---

[1] Defendant also argues, in passing, that the December 8th affidavit (authored by Agent Reidlinger and used in support of the application to search 15th Avenue) "fails to satisfy the 'oath and affirmation' requirement of the Fourth Amendment by impermissibly relying on the oath and affirmation of Special Agent Graessele [in Graessele's previous Title III intercept affidavit]." (Def.'s Mot. ¶ 12.) Pursuant to the oath and affirmation requirement, all information to be considered by the issuing magistrate in making the probable cause determination for a search warrant must be put forward under oath. U.S. Const. amend. IV. In this case, both the December 8th search warrant affidavit (authored by Agent Reidlinger) and the affidavits used in support of the previous Title III intercept applications and extensions (authored by Agent Graessele) are properly sworn and signed by their respective authors. Thus, to the extent that defendant has challenged the warrants in this regard, the challenge is rejected.

4

opinion. But to the extent that defendant argues that the warrants lacked something in terms of proper incorporation, the argument is rejected.

### B. Probable cause and particularity

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Defendant's argument that the search warrants were not supported by probable cause and violated the Fourth Amendment has three main themes. First, defendant contends that the affidavits accompanying the warrant applications lacked specificity as to the basis for believing that evidence would be found within the subject premises. Second, defendant asserts that the warrants lacked particularity with respect to the objects to be seized. Third, defendant argues that no "fresh" evidence was provided in support of the search warrant applications, and therefore the application materials were stale and failed to establish probable cause to justify the searches.

### 1. Lack of specific information that evidence would be found in subject locations

Defendant first argues that the search warrants lacked the specificity required to provide the Magistrate with a basis for determining that probable cause existed to search the subject locations. (Def.'s Mot. 5; Def.'s Reply 4, 6.) Defendant contends that the affidavits attached to the search warrant applications provided only broad and conclusory references to "fraudulent activity" and did not provide sufficient detail to

support a conclusion that evidence of crimes would be located in those particular locations. (Def.'s Mot. ¶ 9.)

The court first notes that defendant's argument relies heavily on his assumption that the detail-filled Title III intercept warrant and extension affidavits were improperly incorporated into the search warrant applications, and therefore should not be considered in the probable cause analysis. However, as explained above, this assumption is incorrect. Of course, once this underlying premise is unraveled, the rest of defendant's argument quickly collapses. Nevertheless, the court examines each warrant and its supporting documents in turn below. The court finds that each warrant was properly supported by probable cause to believe that evidence of a crime would be found at the locations searched.

"Probable cause exists when, considering all the circumstances, the affidavit sets forth sufficient facts to induce a reasonably prudent person to believe that a search will uncover contraband or evidence of a crime." *United States v. Sidwell,* 440 F.3d 865, 868 (7th Cir. 2006). In making a probable cause determination, "a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense." *United States v. Singleton,* 125 F.3d 1097, 1102 (7th Cir. 1997). In addition, a magistrate is "entitled to take into account the experiences of trained officers whose affidavits explain the significance of specific types of information." *United States v. Lamon,* 930 F.2d 1183, 1189 (7th Cir. 1991). A magistrate's determination of probable cause is given

6

considerable weight and will be not be overruled unless "the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *United States v. McKinney,* 919 F.2d 405, 415 (7th Cir. 1990) (citations omitted). "The probable cause inquiry is practical, not technical," and the court is to consider the totality of the circumstances. *United States v. Wiley,* 475 F.3d 908, 915 (7th Cir. 2007). Doubtful cases will be resolved in favor of upholding the warrant. *United States v. Griffin,* 827 F.2d 1108, 1111 (7th Cir. 1987).

In the December 5th affidavits, which accompanied the applications to search the Industrial Highway and 6th Avenue locations, Agent Graessle explained that he has been a special agent with the FBI for twenty-eight years. He also outlined his personal involvement and experience with defendant's case. Agent Graessle averred that there was probable cause to believe that defendant was involved in extortion, fraud, embezzlement, bribery, tax evasion, money laundering, and other crimes at the expense of the citizens of Gary and in violation of federal law. Agent Graessle attested that his belief was supported by information received through intercepted telephone communications and confidential informants. Agent Graessle specifically incorporated by reference the affidavits provided in support of the Title III communication intercept warrant applications, as well as those affidavits provided in support of applications for extensions of those warrants. (Dec. 5th Aff. ¶ 12.)

The December 5th affidavits and the affidavits it incorporated by reference provided probable cause to believe that evidence would be discovered at the Industrial Highway location. In the Title III affidavits, Agent Graessle compiled information tending to show that defendant was a powerful pseudo-political figure whose businesses stood to profit from his knowledge of and ability to manipulate the city's political leaders and financial assets. *(See, e.g.,* Aug. 25 Aff. ¶ 72 (corporate tax returns show defendants companies received $15 million from Gary contracts between 1998 and 2001); Nov. 4 Aff. ¶ 40 (defendant and Mayor discuss ways to juggle departmental budgets to ensure that defendant's city contracts are paid); Nov. 25 Aff. ¶ 45 (city departments reorganized to put defendant's brother in charge of demolition expenditures.)) In the Title III affidavits, Graessle attested that defendant's companies, including Enterprise Properties, were involved in numerous contracts with the City of Gary, which the Government contends were fraudulently obtained or otherwise illegal. *(E.g.,* Oct. 24 Aff. ¶ 7.) Graessle asserted in the December 5th affidavits that he knew from personally listening to intercepted telephone conversations of Enterprise Properties and Enterprise Trucking that defendant kept business records at the Industrial Highway location. (Dec. 5th Aff. ¶ 15.) For these reasons, a reasonably prudent person would believe that evidence of crimes would be found at the Industrial Highway location.

The same is true for the 6th Avenue location. Graessle attested that according to confidential informant CS-3, computers, filing cabinets, and records had been routinely

observed at the 6th Avenue location. (Dec. 5 Aff. ¶ 14.) The Title III affidavits also make clear that defendant's business located at the 6th Avenue location, Enterprise Trucking, was involved in numerous contracts and subcontracts involving the City of Gary, which the Government contends were fraudulently obtained or otherwise involved illegal activity. (*See, e.g.*, Aug. 25 Aff. ¶ 63 (waste management subcontract); Nov. 25 Aff. ¶ 38-44 (school demolition contracts.)) Further, the Title III affidavits detailed dozens of incriminating conversations involving defendant taking place at the 6th Avenue location related to the alleged schemes. (*See, e.g.*, Aug. 25 Aff. ¶ 38, 41-49 (baseball stadium contract scheme); Aug. 25 Aff. ¶ 55-56 (school district contract scheme); Aug. 25 Aff. ¶ 65-68 (fundraising fraud); Nov. 25 Aff. ¶ 38-44 (school district contract scheme); Nov. 25 Aff. ¶ 24-25 (phony city expenditures to benefit defendant's ally, and ultimately benefit defendant in acquiring desirable business property.)) These conversations were either recorded by confidential informants at the 6th Avenue location, or were intercepted on a landline registered to the 6th Avenue location. These factors indicate that the 6th Avenue location was a stronghold of defendant's alleged schemes, and that items related to the schemes would likely be found there. Indeed, this very sentiment was conveyed by a city political figure in a recorded conversation with a confidential informant when he stated: "Directly or indirectly, all things lead to 6th Avenue." (Aug. 25 Aff. ¶ 71.)

The application for the warrant to search the 15th Avenue location incorporated the December 8th affidavit, authored by Agent Reidlinger, which in turn incorporated

Title III intercept affidavits. (Dec. 8 Aff. ¶ 12.) These affidavits taken together clearly provide probable cause to believe that evidence would be found at the 15th Avenue location. As detailed above, the affidavits indicate that Enterprise Trucking was associated with a number of city contracts and subcontracts, which the Government alleges were fraudulently obtained or otherwise violated federal law. Agent Reidlinger states in the December 8th affidavit that he knew based on information provided by intercepted telephone conversations of Enterprise Properties and Enterprise Trucking that business records were maintained at the 15th Avenue location. (Dec. 8 Aff. ¶ 14.) Agent Reidlinger further attested that in a telephone conversation intercepted on December 8, 2003, defendant spoke of the execution of the other search warrants and stated that if law enforcement wanted to catch him at something, they would be at this 15th Avenue location. (Dec. 8 Aff. ¶ 14.) These factors show that a reasonably prudent person would believe that evidence would be located at the 15th Avenue office.

      *2. Insufficient particularity as to items to be seized*

Defendant devotes little more than one sentence to the notion that the warrants and their supporting documents did not describe with particularity the items to be seized in the search: "Moreover, the Graessele Affidavit asks for virtually all of Defendant's business records kept with Enterprise Trucking and Enterprise Properties and references the aforementioned plethora of federal criminal statutes." (Def.'s Mot. 5.) Even assuming that this sentence can be taken as a meaningful argument that the warrant was insufficiently particular as to the items to be seized, the court disagrees.

The Fourth Amendment requires that search warrants "particularly describ[e]" the objects to be seized. "Failure to do so renders the warrant a 'general warrant,' which the amendment's plain language clearly forbids." *United States v. Nafzger,* 965 F.2d 213, 215 (7th Cir. 1992). In *United States v. Bentley,* the Seventh Circuit held that although warrants may not use "open-ended descriptions" in describing the items to be seized, a description is only required to be "as particular as the circumstances reasonably permit." 825 F.2d 1104, 1110 (7th Cir. 1987). A description reading "all records" may, in some circumstances, be the most accurate and detailed description possible, such as when an alleged fraud infects every aspect of a business. *Id.* The Seventh Circuit reasoned that "when there is probable cause to seize every business paper on the premises, a warrant saying 'seize every business paper' particularly describes the things to be searched for and seized." *Id.*

In this case, the warrants directed agents to confiscate all documents and records regarding transactions of or related to defendant's businesses (as well as numerous other types of documents, including payroll records, tax returns, deeds, records of political contributions, etc.).[2] The warrant applications and affidavits incorporated therein by reference provided ample room for the magistrate to have determined that there was probable cause to believe that those types of items were related to the numerous schemes that defendant was allegedly orchestrating, and that the schemes

---

[2] Each list attached to each warrant was very similar in form and wording, and they are treated as virtually identical for purposes of this analysis.

infiltrated defendant's businesses to such an extent that it would be difficult and
impractical for the warrant to instruct agents on how to segregate documents related to
the schemes from those not related to the schemes. Under these circumstances, the lists
of the types of documents to be seized that accompanied the warrants were sufficiently
particularized to meet the demands of the Fourth Amendment. *See United States v. Kail,*
804 F.2d 441, 445 (8th Cir. 1986) (warrant seeking "accounting ledgers or records,
checkbooks, monthly statements, cancelled checks, and deposit slips, . . . inventory
records, records of safety deposit boxes, . . . customer files, client lists, letters and
mailings from clients," was sufficiently particular despite encompassing virtually every
business record on premise because "there was probable cause to believe that fraud
permeated the entire business operation"); *United States v. Majors,* 196 F.3d 1206, 1216
(11th Cir. 1999) (warrant for "[b]ooks, [l]edgers, [r]eceipts, [i]nvoices, [b]usiness records,
the identification of [f]inancial accounts" sufficient given the peculiar nature of a charge
of fraud, especially where corporations are used as vehicles of fraud ); *United States v.
Davis,* 226 F.3d 346, 352 (5th Cir. 2000) (warrant for 15 generic categories of financial
documents sufficient given the kind of fraud alleged, including failure to file required
tax returns, which "would require review of broad categories of records"). Further,
defendant's focus on the sheer quantity of documents seized is misplaced. Even a
warrant calling for truckloads of documents does not offend the Fourth Amendment if
there is probable cause to support the seizure. *Id.* As the Seventh Circuit aptly stated,

"[a] criminal venture does not get extra protection by being large, generating extra paper." *Id.*

      *3. Stale evidence*

      Defendant also argues that the search warrants were not supported by probable cause because the evidence provided was "stale." The court first addresses defendant's claim that Agent Graessele admitted that the search warrants were premature and unsupported by fresh evidence. Defendant points to two Title III intercept affidavits by Agent Graessele, dated November 4th and 25th respectively, each of which state the following: "The execution of search warrants is contemplated to play a major role in securing documentation and other physical evidence of the schemes described in this affidavit after the details of the fraudulent agreements between the co-conspirators is determined." Defendant argues that "in essence" Agent Graessele was "implying, if not tacitly representing, to this Court that an application for search warrant was premature." (Def.'s Reply 6.) Defendant goes on to argue that "[a] mere ten days after making this representation, however, the government filed applications for search warrants." (Def.'s Reply 6.) However, the court declines to interpret Agent Graessele's November 4 and 25 statements that search warrants would likely be used in the course of the investigation as an admission that future search warrant applications would not provide the requisite probable cause. To the court's knowledge, no caselaw supports such a tenuous argument.

The court also rejects defendant's argument that only "stale" information was set forth in the search warrant applications. Defendant argues that essentially the same information was provided for the Title III intercept applications, and that the search warrant applications presented nothing new. Defendant claims that without any additional "fresh" evidence, the search warrant applications do not set forth probable cause to justify the searches. However, there is no rule stating that two warrants cannot be supported by virtually all of the same evidence. Thus, the only question for the court is whether the search warrant applications, which (as explained above) properly incorporated the Title III intercept affidavits, presented evidence too stale to support the magistrate's determination of probable cause.

The age of the information contained in an affidavit supporting a warrant application is one factor that a court should consider in making a probable cause determination. *United States v. Spry,* 190 F.3d 829, 836 (7th Cir. 1999); *United States v. Pless,* 982 F.2d 1118, 1125-26 (7th Cir. 1992). Probable cause is less likely to be found when the information in the affidavit is old. *United States v. McNeese,* 901 F.2d 585, 596-97 (7th Cir. 1990), *overruled on other grounds, United States v. Westmoreland,* 240 F.3d 618 (7th Cir. 2001). However, in the context of an "activity of a protracted and continuous nature, the passage of time between the last described act and the application for the warrant diminishes in significance." *Id.* at 597; *Pless,* 982 F.2d at 1126 ("Passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity."). Further, if there are other indicia of reliability, then the age of the

14

information is less of a factor. *McNeese,* 901 F.2d at 596-97; *see also Pless,* 982 F.2d at 1125-26 (court should not hesitate to issue a warrant when there are other factors supporting reliability).

The warrant applications to search the 6th Avenue and Industrial Highway locations and the supporting December 5th affidavits relied almost exclusively on the information contained in the Title III affidavits. The Title III affidavits (supporting both the applications for interception and the applications for extensions of time) were dated August 25, September 26, October 24, November 4, and November 25, 2003. Therefore, when the December 5th affidavits were submitted, the oldest Title III intercept affidavit was three and one-half months old, and the most recent was ten days old. The information contained therein described activity dating back to the mid-1990's (*see, e.g.,* Aug. 25 Aff. ¶¶ 33-35, campaign committee fees received by defendant since 1994) and continuing through 2003. (*See, e.g.,* Aug. 25 Aff. ¶¶ 37-50, recordings of conversations between defendant and CS-1 in 2001 and 2002 regarding baseball stadium construction; Aug. 25 Aff. ¶¶ 51-57, recordings of conversations between defendant and CS-3 in 2003 regarding school construction project; Sept. 26 Aff. ¶ 29, intercepted conversations concerning fundraising in 2003.) The November 25, 2003, Title III affidavit suggests that as of that time Harris was still continuing to manipulate the city government (*see, e.g.,* ¶ 45) and engage in fraudulent contracting practices (*see, e.g.,* ¶ 23).

In the context of an ongoing continuous criminal enterprise, a lag of few months between receipt of information and a warrant application does not necessarily signify a

15

lack of probable cause. *See, e.g., Spry,* 190 F.3d at 829 (drugs found at defendant's premises in May 1997 was not stale evidence for February 1998 search warrant given evidence of "ongoing continuous criminal activity"); *McNeese,* 901 F.2d at 597 (seven-month-old information was not stale in context of ongoing drug conspiracy spanning more than two years); *United States v. Hanhardt,* 157 F. Supp. 2d 978, 990-92 (N.D. Ill. 2001) (information dating back to 1950's, 60's and 70's did not make 1996 Title III intercept authorization void of probable cause, as it provided historical background for long-running conspiracy). The ongoing nature of defendant's alleged criminal activity is apparent, and thus the age of the information is less significant.

Any gap between the evidence on which the warrants were based and the execution of the warrants is also minimized when "taking into account the nature of the evidence and the offense." *Singleton,* 125 F.3d at 1102. Unlike drugs, for example, business records are not the kind of evidence that would likely vanish quickly. The Supreme Court illustrated this concept in *Andresen v. Maryland*:

> It is also argued that there was a three-month delay between the completion of the transactions on which the warrants were based, and the ensuing searches . . . . This contention is belied by the particular facts of the case. The business records sought were prepared in the ordinary course of petitioner's business in his law office or that of his real estate corporation. It is eminently reasonable to expect that [business] records would be maintained in those offices for a period of time and surely as long as the three months required for the investigation of a complex real estate scheme.

427 U.S. 463, 479 n.9 (1976); *United States v. Farmer,* 370 F.3d 435, 440 (4th Cir. 2004) (search not based on stale evidence because bank statements, canceled checks and check registers are "precisely the types of records that are not ordinarily destroyed or moved about from one place to another"); *United States v. Word,* 806 F.2d 658, 662 (6th Cir. 1986) (several-month lapse did not render information stale where "documents sought were business records prepared and kept in the ordinary course of business"); *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents,* 307 F.3d 137, 148 (3d Cir. 2002) ("[T]he warrant authorized a search for standard categories of business records. Businesses typically retain such records for an extended period of time–certainly for more than 11 months. For these reasons, we hold that it was objectively reasonable for the executing officers to believe that the evidence supporting the search warrant was not stale.").

Because the evidence sought to be seized in this case consisted of business records and other documents that do not generally disappear quickly, defendant's staleness argument is less persuasive. As another court aptly put it, "[t]o accept defendant's staleness argument, we would have to suppose that a successful and profitable criminal enterprise simply faded away for no apparent reason. This would defy common sense." *Farmer,* 370 F.3d at 440. Indeed, in light of the totality of the circumstances, a reasonably prudent person would conclude that defendant had engaged in criminal activity stretching back to the previous decade, that he was still engaging in such activity, and that evidence of the crimes would be discovered at the

17

6th Avenue and Industrial Highway locations. This is all that was required to satisfy the Fourth Amendment's probable cause requirement.

Because the search warrant for the 15th Avenue location is similarly rooted in the Title III affidavits, the same sufficiently "fresh" information contained in those affidavits goes to support the 15th Avenue search warrant as well. But the affidavit supporting it, the December 8th affidavit, provides an additional key piece of evidence: defendant's own statement on December 8th, intercepted via wire tap, that if investigators wanted to catch him at something they would be at his 15th Avenue location. Clearly this intercepted statement, when considered in the context of the history of defendant's purported schemes to defraud the City of Gary by way of his businesses, breathes new life into older evidence and provides probable cause to believe that evidence could be found imminently at defendant's 15th Avenue business location. Further, this statement took place on December 8, 2003, and the search warrant for 15th Avenue was issued the same day, so very little time elapsed between the discovery of the new evidence and the issuance of the warrant.

### C. The First Amendment

Defendant also argues that the warrants should be quashed and the evidence seized should be suppressed based on the First Amendment. The crux of defendant's argument is that the documents seized from his offices related to his First Amendment right to maintain political associations, providing "an independent basis for the quashing of these warrants and suppressing the evidence obtained." (Def.'s Mot. 7.)

18

Contrary to defendant's assertion, the fact that objects to be seized implicate the First Amendment in some way does not mean that a seizure of them is unlawful. *Frisby v. United States,* 79 F.3d 29, 32 (6th Cir. 1996) (rejecting argument that pamphlets and publications expressing "anti-tax" political beliefs are protected by the First Amendment, making their seizure unlawful, where probable cause existed to believe that they were used to facilitate criminal activity). However, though defendant does not mention it, the Supreme Court's decision in *Zurcher v. Stanford Daily* requires that "the courts apply the warrant requirements with particular exactitude when First Amendment interests would be endangered by the search." 436 U.S. 547, 565 (1978). Assuming for the sake of argument that defendant would have made an argument based on *Zurcher* (and that the First Amendment is even relevant to this case) the court still finds that the warrant procedures used to search defendant's businesses complied with the law.

The majority in *Zurcher* concluded that a properly administered warrant process, which takes into account "probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness," affords sufficient protection to First Amendment values. *Id.* For the reasons already set forth in detail in this opinion, the warrants in this case were properly supported by probable cause, possessed the requisite specificity as to the place to be searched and the things to be seized, and were reasonable overall. This is not even one of the more questionable cases in which no warrant existed, and an officer was left to determine on her own whether

19

seizing certain evidence would violate the Fourth or First Amendments. Instead, the warrants were signed in advance by a magistrate, the body that is required to "guard against searches of the type, scope, and intrusiveness that would actually interfere" with First Amendment values. *Id.* at 566. Accordingly, even though defendant did not raise the argument, the court finds no reason to believe that warrant procedures were not applied with "particular exactitude" in this case, and there is no reason to quash the warrants or suppress any evidence seized based on *Zurcher*.

Defendant's "First Amendment" argument does not end there. He also advocates for quashing the warrant and/or suppressing the evidence seized based on the fact that longstanding Supreme Court and Seventh Circuit precedent analyzing the First Amendment right to free speech and political association require proof of an explicit "quid pro quo" exchange in order to constitute bribery. (Def.'s Mot. 8.) The Government does not dispute that the law requires proof of a "quid pro quo" exchange, but argues that such matters are for the jury to consider later on down the road. The court agrees. Whether the Government will ultimately be able to prove to a jury's satisfaction that a "quid pro quo" exchange took place is not a matter for the court to concern itself with on a defendant's motion to quash a warrant or suppress evidence. The case defendant relies on, *United States v. Allen,* 10 F.3d 405 (7th Cir. 1993), relates not to warrants or suppression of evidence, but rather to what instructions are proper to give to the jury on the law of bribery. The case is not on point in relation to the present motion, and does not provide reason to quash the warrants or suppress the evidence seized in this case.

20

**III. CONCLUSION**

For the foregoing reasons, defendant's motion to quash the search warrants and

suppress seized evidence (docket # 15) is **DENIED**.

**SO ORDERED.**

**ENTER:** July 24, 2007

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT